UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 07 CR 796 |
| v. | ) | |
| | ) | Honorable Joan H. Lefkow |
| ABRAHAM LIRA ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT ROSALES' MOTION TO SEVER**

Defendant Jessica Rosales ("Rosales"), by her attorney, Timothy P. O'Connor, respectfully requests that this Court enter an Order (1) severing her trial from the trial of her co-defendants Abraham Lira ("Lira") and Roberto Navar ("Navar") and (2) in any event and in the alternative severing the trial of Count One of the Indictment – which charges an April 2, 2007 bank robbery solely involving Lira – from the trial of the rest of the charges (Counts Two through Five), all of which concern a December 4, 2007 bank robbery that the government contends involved all three defendants.

**BACKGROUND**

On January 15, 2008, a grand jury handed up a five count Indictment charging Lira, Navar and Rosales with bank robbery related offenses. Count One charged Lira with robbing the Fifth Third Bank in Cicero on or about April 2, 2007 in violation of 18 U.S.C. § 2113(a). R. 19, Count One. Count Two charged Lira with robbing the Harris Bank in Berwyn on or about December 4, 2007 in violation of 18 U.S.C. § 2113(a). Id., Count Two. Count Three charged Rosales and Lira with conspiring on or about December 4, 2007 to rob the Harris Bank in Berwyn in violation of 18 U.S.C. § 371. Id, Count Three. Count Four charged Rosales with

knowingly possessing and concealing more than $1,000 in United States currency on or about December 5, 2007 that she knew had been stolen from the Harris Bank. Id, Count Four. Count Five charged Navar with knowingly possessing and concealing more than $1,000 in United States currency on or about December 5, 2007 that he knew had been stolen from the Harris Bank. Id, Count Five.

According to documents produced by the government in discovery, in the aftermath of the robbery of the Harris Bank on December 4, 2007, all three defendants were questioned by FBI agents and other law enforcement officers. According to the reports, each defendant made at least an oral statement (and Rosales and Lira made written statements as well) implicating one or more of his or her co-defendants in the robbery of the Harris Bank.

**Statements Of Lira.** The FBI report of the oral statement of Abraham Lira states, inter alia:

> LIRA admitted to robbing two banks. LIRA identified himself in the bank robbery photos from April 2, 2007, and December 4, 2007. LIRA initialed and dated the photos. LIRA also identified photo copies of the bank robbery notes from each robbery as notes that he wrote. LIRA also dated and initialed the notes…..
>
> On December 4, 2007, LIRA, ROSALES, and ROBERTO NAVAR planned a bank robbery. NAVAR is Rosales' cousin. LIRA, ROSALES and NAVOR [sic] all reside at 6413 W. 33rd Street, Berwyn, IL, with NAVAR'S mother – CINDY HUERTA. HUERTA had nothing to do with the robbery or the planning. The robbery was planned that morning. The three walked to the HARRIS BANK. LIRA went to the bank and ROSALES and NAVAR waited a few blocks away …. After robbing the bank, they all walked back. As they walked back, NAVAR saw a lot of cops and decided to walk away from them. They counted the money and went home. The three of them then went to ROGELIO CARRILLO'S home (LIRA'S cousin), which is located at 3207 S. Central Park….LIRA, ROSALES, NAVAR and CARRILLO then traveled in a taxi to get some 'weed' ….
>
> LIRA stated that they got approximately $11,000.00 and split it three ways between LIRA, ROSALES and NAVAR. The money is hidden at 6413 W. 33rd Street in NAVAR'S basement room in the ceiling.

December 10, 2007 Report Of Interview Of Abraham Lira, attached hereto as Exhibit A.  Lira's

written statement includes the following assertions:

> This morning when me and girlfriend Jessica Rosales woked up we talked to her
> cousin Roberto Navar about robbing Harrison Bank and we did like the first bank.
> I used a note my girlfriend and her cousin Roberto waited for me a block away we
> met up I changed clothes then we started walking then Roberto caught up to us….
>
> We bought a little bit of weed to smoke …. From there [Lalo's restaurant] we
> went to Roberto's house 6413 W. 33rd St.  We hid the money in his room by the
> ceiling….

Written Statement Of Abraham Lira, attached hereto as Exhibit B.

**Statement Of Navar.** According to the FBI report of the oral statement of Roberto

Navar, Navar admitted lying multiple times during the interview but implicated his co-

defendants Rosales and Lira in the robbery.  The report states, <u>inter</u> <u>alia</u>:

> On December 3, 2007, JESSICA ROSALES and ABRAHAM LIRA discussed
> going to a temp agency.  NAVAR, ROSALES and LIRA are all good friends and
> the [sic] trust each other.  On December 4, 2007, they asked NAVAR if he wanted
> in on a bank robbery.  LIRA stated that he knew how to do it and that he had
> gotten away with it before.  LIRA scoped out the bank at approximately 6:00AM.
> ROSALES and LIRA left, walking to rob the bank between 8:30AM and 9:00
> AM…..
>
> NAVAR stated that he saw the money at 6:30 PM when ROSALES left.
> ROSALES gave NAVAR $750.00, then gave him another $600.00, which
> NAVAR placed on his pre-paid credit card….
>
> After confronting NAVAR with facts gathered pursuant to the investigation that
> were contradictory to his statements, NAVAR admitted to lying to SA Coleman
> and TFO Bradley.  After being admonished about remaining truthful, NAVAR
> provided the following:
>
> ROSALES and LIRA  made the plan and woke NAVAR to tell him the plan.
> ROSALES stated that she wrote the note.  The writer then published a photo copy
> of the note to NAVAR who then verified that it was the note that he had seen
> previously.  NAVAR did not see ROSALES write the note.  NAVAR also stated
> that ROSALES was angered after the robbery because LIRA left the note with her
> prints on it at the bank.

NAVAR wanted to see the bank robbery happen, so he went with them….. LIRA got NAVAR's B.B. pistol and put on some gold colored jogging pants and a black coat. Then they all walked to the bank. NAVAR sat at a Metra stop about a block away. ROSALES went between an apartment building and a house. She was waiting for LIRA and had a change of clothes for LIRA. NAVAR did not see LIRA leave the bank even though it was only about 20 feet away. NAVAR was scared and waked [sic] off. NAVAR thought that LIRA was still inside the bank.

NAVAR did not see LIRA and ROSALES until they came home. LIRA changed clothes and dropped the gun. NAVAR put it away. NAVAR watched TV upstairs with his brother while LIRA and ROSALES counted the money. They put the money in a green purse and placed it into the ceiling of NAVAR'S basement room.

LIRA called his cousin, ROGELIO, and they took a cab and later bought an ounce of "weed" and smoked it at a friend's house. While in the cab, NAVAR witnessed them count about $3,000.00….

When ROSALES left at about 6:30 PM, she stated that she was going leaving [sic] with eight to fifteen thousand dollars of the money. She stated that she was going to ADRIANA LNU's house. NAVAR advised ROSALES to hide some of the money in the bucket of spackle in the basement of the house in his room….

After confronting NAVAR with facts gathered pursuant to the investigation that were contradictory to his statements again, NAVAR admitted to lying to SA Coleman and TFO Bradley as to some of his story. After being admonished about remaining truthful, NAVAR provided the following:

NAVAR admitted that he did steal the $1,350.00 from LIRA and ROSALES….. NAVAR then took investigators and officers from the Berwyn Police Department to his home to retrieve the money in the bucket of spackle. Upon entering the residence, NAVAR admitted to stealing even more of the money. NAVAR led the writer to a couch cushion that had approximately $1,300.00 in cash stashed inside.

December 18, 2007 Report Of Interview Of Roberto Navar, attached hereto as Exhibit B.

**Statements Of Rosales.** The FBI report of the oral statement of Jessica Rosales states,

inter alia:

ROSALES and LIRA were going through hard times. ABRAHAM LIRA had lost his job and ROSALES was looking for a job. ROSALES had just lost her child and felt like she had nothing to lose. LIRA came up with the idea to rob a bank because he had nothing to lose also. LIRA came up with the idea about

3:30AM on December 4, 2007.  ROSALES agreed and went along with the plan because they were living in the basement of her aunt's house.

ROSALES and LIRA told ROBERTO NAVAR …of their plan that morning at approximately 8:40 AM.  Navar said that he wanted in the bank robbery also. NAVAR did not help plan the robbery.  He just wanted in on the action. ROSALES and LIRA walked to the HARRIS BANK.  ROSALES and NAVAR walked to a complex a block away from the bank.  ROSALES held a jacket for LIRA to change into after the robbery, but he did not need it because LIRA had brought his own change of clothes.  NAVAR walked off and around the bank. After the bank robbery, NAVAR walked by them and then proceeded in a different direction, but met with them at the house shortly thereafter.

Once the three made it home, they all counted the money, and talked about what they were going to do.  It was about $11,000.00.  ROSALES gave NAVAR $200.00 and denied giving NAVAR the $1,350.00 that he claimed.  ROSALES believes that NAVAR stole some of the money while she was showering later that day.  They then banded the money, placed it into a purse, and placed in [sic] the in the [sic] ceiling in the basement.  ROSALES took out about $700 to $800.  The three took a taxi to LIRA's cousin's home.  Then, they went to smoke "weed" in the garage of a friend, and finally went to LALO's restaurant to eat.

December 18, 2007 Report of Interview Of Jessica Rosales, attached hereto as Exhibit D.

Rosales' written statement provides:

I Jessica Rosales talked to Abraham about what going to happed [sic] on Dec I help think about what is going to happen and I and Roberto walk 11/2 streets away from the bank and Roberto walked away from the spot where Abraham was going to meet up at.  Abraham get there but Roberto was around then we all meet back at home to Chicago to see Abraham causin [sic] than smoked weed and when out to eat than whent [sic] back to the home and that when the cops get there.

Written Statement Of Jessica Rosales, attached hereto as Exhibit E.[1]

## **ARGUMENT**

"The indictment … may charge a defendant in separate counts with two or more offenses  if the offenses charged … are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan."  Fed. R. Crim.

---

[1]      The copy of Rosales' written statement possessed by counsel cuts off in many places and therefore appears to omit some language therefrom.  Counsel will obtain a better copy of the statement and provide it to the Couirt.

P. 8(a).   "The indictment … [also] … may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions," constituting an offense or offenses.  Fed. R. Crim. P. 8(b).

While "[t]here is a particularly strong preference for a single trial with co-defendants who have been jointly indicted," United States v. Souffront, 338 F.3d 809, 828 (7th Cir. 2003), and there is a "policy favoring joinder" of offenses as promoting "judicial economy and convenience," United States v. Creamer, 370 F.Supp.2d 715, 729 (N.D. Ill. 2005), the Court nonetheless may "order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires" where "…joinder of offenses or defendants in an indictment … appears to prejudice a defendant…"  Fed. R. Crim. P. 14(a).  "When defendants have been properly joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  Souffront, 338 F.3d at 828 (quotations and citations omitted).   With respect to the question whether individual counts in an Indictment should be tried separately, "[e]ven if offenses are properly joined, a court has discretion to sever them if their joinder sufficiently prejudices the defendant…"; but, "[i]f the Rule 8 requirements are met, then Rule 14 controls severance issues."  Creamer, 370 F.Supp.2d at 729.

Rosales respectfully submits, for the reasons set forth below, that (1) the trial of the charges against her should be severed from the trial of the charges against her co-defendants Lira and Navar and she should be tried individually and (2) the trial of Count One (concerning the April 2, 2007 robbery of Fifth Third Bank, where only Lira is charged) in any event and in the alternative should be severed from the trial of the remaining charges because it was not properly joined in the same Indictment with those charges (all of which concern the December 4, 2007 robbery of Harris Bank

and involve all defendants) and its adjudication in a joint trial with those charges would severely prejudice Rosales.

## I.    THIS COURT SHOULD SEVER ROSALES' TRIAL FROM THAT OF HER CO-DEFENDANTS'

Rosales submits that the charges against her should be severed for a separate, individual trial for two reasons.  First, this case presents a classic circumstance in which a joint trial of co-defendants "would compromise a specific trial right" of Rosales.  As noted above, Lira and Navar apparently have made statements implicating Rosales.  The use of such statements at trial would deprive Rosales of her sixth amendment right to confront the witnesses against her because Lira and Navar have an absolute right not to testify,  Bruton v. United States, 391 U.S. 123, 135-36 (1968) (defendant's sixth amendment right to confront witnesses against him is violated when the statement of a non-testifying co-defendant implicating defendant is admitted into evidence, even if the jury is instructed to consider the statement only against the non-testifying co-defendant), and neither redaction of the statements nor a limiting instruction can cure this deprivation of Rosales' sixth amendment rights.  Second, Rosales respectfully submits that she is entitled to a severance because a joint trial of Count One (in which Lira alone is charged with the April 2, 2007 robbery of Fifth Third Bank) and the other charges will deprive Rosales' of a fair trial of the charges against her, which arise solely from the December 4, 2007 robbery of the Harris Bank.

### A.  A Joint Trial Would Deprive Rosales Of The Sixth Amendment Right To Confront The Witnesses Against Her

In the years since Bruton, supra, the courts have developed a set of rules for determining whether a joint trial still may be had under circumstances such as those present here – where co-defendants have made statements implicating one another -- by redacting references to co-

defendants in such statements and giving the jury a limiting instruction.  See, e.g., Richardson v. Marsh, 481 U.S. 200 (1987) and Gray v. Maryland, 523 U.S. 185 (1998).

In United States v. Sutton, 337 F.3d 792 (7th Cir. 2003), the Seventh Circuit summarized those rules:

> The use of a non-testifying criminal defendant's confession against him in a joint trial risks violating the Confrontation Clause rights of the co-defendants. …. If the confession incriminates the co-defendants, then those co-defendants are denied their rights under the Confrontation Clause to cross-examine the witnesses against them, and their trials must be severed if the confession is to be used.  However, as the Supreme Court and this Court have both recognized, there are ways to use this confession without incriminating the co-defendants, and thus protect the rights of the co-defendants.  Proper redaction of the confession to eliminate all references to the co-defendants, combined with a limiting instruction to the jury that it may not consider the confession against anyone other than the confessing defendant has been found adequate…..  Additionally, a redaction that replaces the codefendant names with neutral pronouns such that there is no obvious reference to the co-defendants will, along with limiting instructions, suffice to protect co-defendants' Confrontation Clause rights….

Sutton, 337 F.3d at 798-99.

Rosales respectfully submits that this case is one in which redaction and a limiting instruction are not sufficient to protect her confrontation clause rights and a severance is warranted.[2] No matter how the statements of her co-defendants are redacted and no matter how the jury is instructed, there simply is no way that a jury trying this case will not know that the person referred to in the relevant redacted portions of those statements is Rosales.  The government contends that its evidence will show that Lira and Rosales – and only Lira and Rosales – were involved in a romantic relationship in December, 2007 and first conspired to rob the Harris Bank in the early morning hours of December 4, 2007.  See, e.g., Indictment, R. 19, Count Three.  The government further

---

[2]    In the event that this Court denies Rosales' motion for a severance, Rosales respectfully requests, while preserving her objection to a joint trial and her position that her trial should be severed from that of her co-defendants, that this Court redact the co-defendants' statements to remove, to the greatest extent possible, any direct and indirect reference to Rosales and issue an appropriate limiting instruction to the jury.

contends that Lira, Rosales and Navar  -- and only Lira, Rosales and Navar -- discussed the robbery later in the morning of December 4, 2007 and that the three of them – and no one else – walked to the Harris Bank, with Navar peeling away at the end leaving Rosales standing outside the bank in one position, Navar standing outside the bank in another position and Lira inside the Bank. Complaint, R. 1, ¶¶ 10, 12.  The government contends that Lira, Rosales and Navar  -- and only Lira, Rosales and Navar – thereafter either counted or possessed the money from the robbery, Indictment, R. 19, Counts, Four and Five, and that, after the arrest of Lira at mid-day on December 4, 2007, only Navar and Rosales had access to the proceeds of the robbery.  See, e.g., Report Of Oral Statements of Lira, Navar and Rosales, Exs. A, C and D, and Indictment, R. 19, Counts Four and Five.

In light of the foregoing, this is not a case where there is a plethora of actors such that it would not be clear -- after redaction -- to whom the codefendants' statements refer because the statements could refer to a number of people.  Here, depending upon which phase of the events at issue is under discussion, the government's evidence and allegations refer only to Lira and Rosales or only to Lira, Navar and Rosales or only to Navar and Rosales.  And given the clearly separate roles that the government claims each person played in the robbery (Lira committed the actual robbery; Lira and Rosales conspired to commit the robbery; Lira, Rosales and Navar walked to the bank; Lira and Rosales counted the money; and Rosales, Lira and Navar all knowingly received the proceeds of the robbery, see, e.g., Indictment, R. 19, Counts Two through Five), the references by Lira and Navar to Rosales still clearly will refer to Rosales even after redactions and the issuance of limiting instructions.   Rosales therefore will be deprived of her sixth amendment right to cross-examine these very significant and adverse witnesses and statements.

Under circumstances such as these, Rosales respectfully submits that severance clearly is warranted.  Cf. United States v. Hoover, 246 F.3d 1054, 1059 (7th Cir. 2001) (redaction that left "one-to-one correspondence between …confession and easily identified figures sitting at the defense table" violates Bruton although violation was harmless:  "… only a person unfit to be a juror could have failed to appreciate that the 'incarcerated leader' and 'unincarcerated leader' were Hoover and Shell"); United States v. Eskridge, 164 F.3d 1042, 1044 (7th Cir. 1998) (replacement of codefendant's name with "another" violated Bruton  although violation was harmless: "In Gray, the Court held that in a joint trial of two defendants, the use of one defendant's redacted confession [that replaced the other defendant's name "with an obvious indication of deletion"] violated the Sixth Amendment rights of the other defendant, despite the fact that the trial judge gave an instruction that it could only be used against the defendant who had confessed.").

### B.  The April, 2007 Robbery Charge Against Lira Warrants A Separate Trial For Rosales

A further significant reason for a severance is that Rosales will be significantly prejudiced in her defense of the charges arising from the December 4, 2007 robbery of the Harris Bank by the adjudication in the same trial of the charge (Count One) that Lira robbed the Fifth Third Bank eight months earlier, even before (according to his own statement) Lira became involved with Rosales. Ex. A, FBI Report Of Oral Statement Of Lira, p. 1 (noting that friendship of Lira and "George" ended shortly after April 2, 2007 robbery because Lira became involved with Rosales).  The government claims, and has produced in discovery reports from the Berwyn Police Department indicating, that both Rosales and Navar went to the Berwyn Police in November, 2007 and reported that Lira had told them that he had robbed a bank in Cicero earlier that year.  See Complaint, R. 1,

¶¶ 6, 7.  According to the Berwyn Police, Rosales even stated that the bank was possibly a Fifth Third Bank.  Id, ¶ 6.

Thus, even putting Lira's post-arrest statements aside, a joint trial with Lira would be devastating for Rosales.  She cannot, even absent Lira's statements, obtain a fair trial in a joint trial with Lira because of the separate charge against Lira contained in Count One.  The jury will hear the evidence with respect to the April 2, 2007 robbery of Fifth Third Bank in Cicero and hear of Rosales' claimed statement about that robbery to the Berwyn Police.  In light of this evidence, there is an acute danger that the jury will conclude that, because Rosales was involved in a romantic relationship with Lira and living with him notwithstanding her knowledge (whatever that was, if any) of his past activities, she must have knowingly participated in the subsequent December 4, 2007 robbery of the Harris Bank for which she is charged.  Rosales has an absolute right to a fair trial of the government's claim that she conspired with Lira to rob the Harris Bank and that she knowingly possessed and concealed proceeds from that robbery.  But she cannot obtain such a trial in a joint proceeding where Lira is being tried at the same time for not just the Harris Bank robbery but also the Fifth Third Bank robbery.  In light of the subsequent relationship between Rosales and Lira, the jury will be unable – regardless of any limiting instructions -- to segregate and compartmentalize the evidence and there will be "prejudicial spillover" that will deprive Rosales of a fair trial.[3]  Because of Lira's and Rosales' subsequent romantic relationship, the jury will be constitutionally unable to consider the evidence with respect to the April 2, 2007 Fifth Third Bank robbery solely against Lira.  United States v. Stillo, 57 F.3d 553, 557 (7th Cir. 1995) ("In order to succeed on … claim [that he was entitled to severance because of prejudicial spillover from

---

[3]     Rosales at this point makes no comment with respect to the defense that she will present, but reserves here the right to move for a severance in the future if, as the case proceeds, it becomes apparent that any of the co-defendants are presenting antagonistic defenses such that a severance on that basis is warranted.

charges not involving defendant], … [defendant] … "'must rebut the dual presumptions that a jury will (1) capably sort through the evidence and (2) follow limiting instructions from the court to consider each defendant separately.'") (quoting  United States v. Lopez, 6 F.3d 1281, 1286 (7th Cir.1993).

## II.    IN ANY EVENT, THE APRIL 2007 ROBBERY CHARGE (COUNT ONE) AGAINST LIRA SHOULD BE TRIED SEPARATELY

In the event that this Court declines to sever Rosales' trial from that of her co-defendants, Rosales nonetheless respectfully submits that this Court should sever the trial of Count One of the Indictment – which charges Lira alone with robbing the Fifth Third Bank in Cicero on April 2, 2007 -- from the trial of the remaining counts of the Indictment, all of which concern the December 4, 2007 robbery of the Harris Bank in Berwyn.  First, Count One is not properly joined under Fed. R. Crim. P. 8(a) to the remainder of the charges.  Second, Count One in any event should be severed under Fed. R. Crim. P. 14(a).

### A.  Count One Is Not Properly Joined Under Fed. R. Crim. P. 8(a)

"The government may charge a defendant with multiple offenses provided that they 'are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.'"  Creamer, 370 F.Supp.2d at 728-29 (quoting Fed. R. Crim. P. 8(a)).  Here, there is no basis for contending that the two robberies at issue – Fifth Third Bank on April 2, 2007 and Harris Bank on December 4, 2007 – "are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan."  They are different robberies, separated by approximately eight months and the only commonality between them is that Lira is charged in both robberies and there arguably is a superficial similarity in the modus operandi used therein (a note was used in both robberies).

The only possible basis for joinder is that the robberies "are of the same or similar character." "Counts may be joined pursuant to this prong of the rule if the offenses 'are of like class,' even if they are not temporally or evidentially related." United States v. Alexander, 135 F.3d 470, 476 (7th Cir. 1998) (quoting United States v. Coleman, 22 F.3d 126, 133 (1994)).

Rosales respectfully submits that the two robberies fail to satisfy this criterion. All they have in common is that they both involve a direct robbery charge under § 2113(a) against Lira with respect to both robberies. The similarity ends there. According to the government, the Fifth Third Bank robbery was committed solely and entirely by Lira; there is no claim that anyone else either conspired with him to commit the robbery or shared with him in the proceeds thereof or otherwise participated therein. Indictment, R. 19, Count One and passim. By contrast, the Harris Bank robbery involves – in addition to the direct robbery charge against Lira – a separate conspiracy charge against Lira and Rosales with four alleged overt acts, including claims that Rosales waited outside the Bank with a change of clothes for Lira, that Rosales and Lira counted the money together after the robbery and that Rosales and Lira hid the money together after counting it, Indictment, R. 19, Count Three, and separate charges against Rosales and Navar for concealing and possessing proceeds of the robbery. Id, Counts Four and Five. Nothing like this is alleged in the Indictment – or otherwise claimed by the government with respect to – the Fifth Third Bank robbery, which the government claims was committed approximately eight months before the Harris Bank robbery and before Lira even began seeing Rosales.

Under these circumstances, the Fifth Third Bank robbery is of an entirely and materially different character and class than the Harris Bank robbery and charges with respect to the two robberies are not properly joined. One is a simple robbery with one person; the other is a

complicated robbery with an accompanying alleged conspiracy involving multiple actors and multiple alleged accomplices after the fact.  The mere fact that Lira is alleged to have actually committed the robbery inside the bank in both instances is not a sufficient basis for joinder.  Rule 8 does not provide for joinder merely because one defendant or a simple charge overlap in two otherwise very disparate offenses.  Fed. R. Crim. P. 8.  That is the only basis for joinder here. Rosales, as explained above and below, will be severely and materially prejudiced in a joint trial involving Count One.  According, Count One was not properly joined with the other charges and should be severed for a separate trial.

### B.  Count One Should Be Severed Under Fed. R. Crim. P. 14(a)

Rosales set forth above the prejudice that she would suffer from a joint trial with Lira because the trial of Count One of the Indictment – concerning a bank robbery that occurred eight months before the robbery for which Rosales is charged, that did not involve Rosales and that occurred even before (according to Lira's written statement) Lira and Rosales began seeing each other – would severely prejudice her defense of the separate charges against her.  Those same reasons, which Rosales incorporates here by reference, support a severance of the trial of Count One from the rest of the case in the event that the Court denies Rosales' motion to sever the charges against her for a separate, individual trial and finds that Count One was properly joined with the other charges herein.  As demonstrated above, Rosales cannot obtain a fair trial with the current Indictment because of the prejudicial spillover effect from Count One.  Stillo, 57 F.3d at 557 (defendant entitled to severance to avoid prejudicial "spillover effect" where jury unable to sift evidence and follow limiting instructions).

## <u>CONCLUSION</u>

Defendant Jessica Rosales respectfully requests that this Court enter an Order (1) severing her trial from the trial of her co-defendants Abraham Lira and Roberto Navar and (2) in any event severing the trial of Count One of the Indictment from the trial of the rest of the charges.

Date:  March 3, 2008.                                 Respectfully submitted,

                                                                        JESSICA ROSALES


                                          By:      /s/Timothy P. O'Connor
                                                          One Of His Attorneys

Timothy P. O'Connor
MEYER & O'CONNOR, LLC
Suite 2210
20 S. Clark
Chicago, IL 60603
(312) 346-9000

**Index To Exhibits**

**Description**                                                      **Designation**

FBI Report Of Lira Oral Statement……………………………………………Exhibit A

Written Statement Of Lira……………………………………………………..Exhibit B

FBI Report Of Navar Oral Statement…………………………………………Exhibit C

FBI Report OF Rosales Oral Statement………………………………………Exhibit D

Written Statement Of Rosales…………………………………………………Exhibit E

**Exhibit A**
**FBI Report Of Lira Oral Statement**

**Exhibit B**
**Written Statement Of Lira**

**Exhibit C**
**FBI Report Of Navar Oral Statement**

**Exhibit D**
**FBI Report OF Rosales Oral Statement**

**Exhibit E**
**Written Statement Of Rosales**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that he caused a copy of the

foregoing DEFENDANT ROSALES' MOTION TO SEVER to be served upon:

AUSA Yussef Dale
United States Attorney's Office
219 S. Dearborn St.
Chicago, IL 60604

Patrick W. Blegen
Blegen & Garvey
Suite 1437
53 W. Jackson Blvd.
Chicago IL 60604

Sergio F. Rodriguez
Federal Defender Program
55 East Monroe
Suite 2800
Chicago IL 60603

by electronic service on this 3rd day of March, 2008.

/s/ Timothy P. O'Connor