UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 07 CR 796 |
| v. | ) | |
| | ) | Honorable Joan H. Lefkow |
| ABRAHAM LIRA ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT ROSALES MOTION FOR PRODUCTION OF AGENT NOTES**

Defendant Jessica Rosales ("Rosales"), by her attorney, Timothy P. O'Connor, respectfully requests that this Court enter an Order directing the government to produce the agent notes underlying the law enforcement reports of oral statements produced in discovery in this matter, which were generated by the FBI. In support thereof, Rosales states as follows:

**BACKGROUND**

On January 15, 2008, a grand jury handed up a four count Indictment charging Lira, Navar and Rosales with bank robbery related offenses. Count one charged Lira with robbing the Fifth Third Bank in Cicero on or about April 2, 2007 in violation of 18 U.S.C. § 2113(a). R. 19, Count One. Count two charged Lira with robbing the Harris Bank in Berwyn on or about December 4, 2007 in violation of 18 U.S.C. § 2113(a). Id., Count Two. Count three charged that Rosales and Lira conspiring on or about December 4, 2007 to rob the Harris Bank in Berwyn in violation of 18 U.S.C. § 371. Id, Count Three. Count four charged Rosales with knowingly possessing and concealing more than $1,000 in United States currency on or about December 5, 2007 that she knew had been

stolen from the Harris Bank.  Id, Count Four.  Count five charged Navar with knowingly possessing and concealing more than $1,000 in United States currency on or about December 5, 2007 that he knew had been stolen from the Harris Bank.  Id, Count Five.

According to reports produced by the government in discovery, in the aftermath of the robbery of the Harris Bank on December 4, 2007, all three defendants were questioned by FBI agents and other law enforcement officers.  According to the reports, each defendant made at least an oral statement and Rosales and Lira made written statements as well.

**Statements Of Lira.**  The FBI report of the oral statement of Abraham Lira states, inter alia:

> LIRA admitted to robbing two banks.  LIRA identified himself in the bank robbery photos from April 2, 2007, and December 4, 2007.  LIRA initialed and dated the photos.  LIRA also identified photo copies of the bank robbery notes from each robbery as notes that he wrote.  LIRA also dated and initialed the notes.
>
> ********************
>
> On December 4, 2007, LIRA, ROSALES, and ROBERTO NAVAR planned a bank robbery.  NAVAR is Rosales' cousin.  LIRA, ROSALES and NAVOR [sic] all reside at 6413 W. 33rd Street, Berwyn, IL, with NAVAR'S mother – CINDY HUERTA.  HUERTA had nothing to do with the robbery or the planning.  The robbery was planned that morning.  The three walked to the HARRIS BANK.  LIRA went to the bank and ROSALES and NAVAR waited a few blocks away …. After robbing the bank, they all walked back.  As they walked back, NAVAR saw a lot of cops and decided to walk away from them.  They counted the money and went home.  The three of them then went to ROGELIO CARRILLO'S home (LIRA'S cousin), which is located at 3207 S. Central Park….LIRA, ROSALES, NAVAR and CARRILLO then traveled in a taxi to get some 'weed' ….
>
> LIRA stated that they got approximately $11,000.00 and split it three ways between LIRA, ROSALES and NAVAR.  The money is hidden at 6413 W. 33rd Street in NAVAR's basement room in the ceiling.

December 10, 2007 Report of Interview Of Abraham Lira.[1]  Lira's written statement includes the following assertions:

> This morning when me and girlfriend Jessica Rosales woked up we talked to her cousin Roberto Navar about robbing Harrison Bank and we did like the first bank.  I used a note my girlfriend and her cousin Roberto waited for me a block away we met up I changed clothes then we started walking then Roberto caught up to us….
>
> We bought a little bit of weed to smoke …. From there [Lalo's restaurant] we went to Roberto's house 6413 W. 33rd St.  We hid the money in his room by the ceiling….

Written Statement Of Abraham Lira.

**Statement Of Navar.** According to the FBI report of the oral statement of Roberto Navar, Navar admitted lying multiple times during the interview.  The report states, inter alia:

> On December 3, 2007, JESSICA ROSALES and ABRAHAM LIRA discussed going to a temp agency.  NAVAR, ROSALES and LIRA are all good friends and the [sic] trust each other.  On December 4, 2007, they asked NAVAR if he wanted in on a bank robbery. LIRA stated that he knew how to do it and that he had gotten away with it before.  LIRA scoped out the bank at approximately 6:00AM.  ROSALES and LIRA left, walking to rob the bank between 8:30AM and 9:00 AM…..
>
> NAVAR stated that he saw the money at 6:30 PM when ROSALES left. ROSALES gave NAVAR $750.00, then gave him another $600.00, which NAVAR placed on his pre-paid credit card….
>
> After confronting NAVAR with facts gathered pursuant to the investigation that were contradictory to his statements, NAVAR admitted to lying to SA Coleman and TFO Bradley.  After being admonished about remaining truthful, NAVAR provided the following:

---

[1]    All of the statements quoted herein are attached as exhibits to Rosales' Motion for Severance as follows: Exhibit A (FBI Report Of Oral Statement Of Lira); Exhibit B (Written Statement Of Lira); Exhibit C (FBI Report Of Oral Statement Of Navar); Exhibit D (FBI Report Of Oral Statement Of Rosales): Exhibit E (Written Statement Of Rosales).  Rosales did not attach these statements hereto to avoid a duplicative and wasteful re-submission of documents provided to the Court elsewhere.

ROSALES and LIRA made the plan and woke NAVAR to tell him the plan. ROSALES stated that she wrote the note. The writer then published a photo copy of the note to NAVAR who then verified that it was the note that he had seen previously. NAVAR did not see ROSALES write the note. NAVAR also stated that ROSALES was angered after the robbery because LIRA left the note with her prints on it at the bank.

NAVAR wanted to see the bank robbery happen, so he went with them….. LIRA got NAVAR's B.B. pistol and put on some gold colored jogging pants and a black coat. Then they all walked to the bank. NAVAR sat at a Metra stop about a block away. ROSALES went between an apartment building and a house. She was waiting for LIRA and had a change of clothes for LIRA. NAVAR did not see LIRA leave the bank even though it was only about 20 feet away. NAVAR was scared and waked [sic] off. NAVAR thought that LIRA was still inside the bank.

NAVAR did not see LIRA and ROSALES until they came home. LIRA changed clothes and dropped the gun. NAVAR put it away. NAVAR watched TV upstairs with his brother while LIRA and ROSALES counted the money. They put the money in a green purse and placed it into the ceiling of NAVAR'S basement room.

LIRA called his cousin, ROGELIO, and they took a cab and later bought an ounce of "weed" and smoked it at a friend's house. While in the cab, NAVAR witnessed them count about $3,000.00….

When ROSALES left at about 6:30 PM, she stated that she was going leaving [sic] with eight to fifteen thousand dollars of the money. She stated that she was going to ADRIANA LNU's house. NAVAR advised ROSALES to hide some of the money in the bucket of spackle in the basement of the house in his room….

After confronting NAVAR with facts gathered pursuant to the investigation that were contradictory to his statements again, NAVAR admitted to lying to SA Coleman and TFO Bradley as to some of his story. After being admonished about remaining truthful, NAVAR provided the following:

NAVAR admitted that he did steal the $1,350.00 from LIRA and ROSALES….. NAVAR then took investigators and officers from the Berwyn Police Department to his home to retrieve the money in the bucket of spackle. Upon entering the residence, NAVAR admitted to stealing even more of the money. NAVAR led the writer to a couch cushion that had approximately $1,300.00 in cash stashed inside.

December 18, 2007 Report of Interview Of Roberto Navar.

**Statements Of Rosales.**  The FBI report of the oral statement of Jessica Rosales states, inter alia:

> ROSALES and LIRA were going through hard times.  ABRAHAM LIRA had lost his job and ROSALES was looking for a job.  ROSALES had just lost her child and felt like she had nothing to lose.  LIRA came up with the idea to rob a bank because he had nothing to lose also.  LIRA came up with the idea about 3:30AM on December 4, 2007.  ROSALES agreed and went along with the plan because they were living in the basement of her aunt's house.
> ROSALES and LIRA told ROBERTO NAVAR …of their plan that morning at approximately 8:40 AM.  Navar said that he wanted in the bank robbery also.   NAVAR did not help plan the robbery.  He just wanted in on the action.
> ROSALES and LIRA walked to the HARRIS BANK.  ROSALES and NAVAR walked to a complex a block away from the bank.  ROSALES held a jacket for LIRA to change into after the robbery, but he did not need it because LIRA had brought his own change of clothes.  NAVAR walked off and around the bank.  After the bank robbery, NAVAR walked by them and then proceeded in a different direction, but met with them at the house shortly thereafter.
>
> Once the three made it home, they all counted the money, and talked about what they were going to do.  It was about $11,000.00.  ROSALES gave NAVAR $200.00 and denied giving NAVAR the $1,350.00 that he claimed.  NAVAR believes that NAVAR stole some of the money while she was showering later that day.  They then banded the money, placed it into a purse, and placed in [sic] the in the [sic] ceiling in the basement.  ROSALES took out about $700 to $800.  The three took a taxi to LIRA's cousin's home.  They, they went to smoke "weed" in the garage of a friend, and finally went to LALO's restaurant to eat.

December 18, 2007 Report of Interview Of Jessica Rosales.  Rosales' written statement provides:

> I Jessica Rosales talked to Abraham about what going to happed [sic] on Dec I help think about what is going to happen and I and Roberto walk 1 1/2 streets away from the bank and Roberto walked away from the spot where Abraham was going to meet up at.  Abraham get there but Roberto was around then we all meet back at home to Chicago to see Abraham causin than smoked weed and when out to eat than whent back to the home and that when the cops get there.

Written Statement Of Jessica Rosales.[2]

## ARGUMENT

The Seventh Circuit has held that agent notes need not be produced so long as the reports that are produced to the defendant that summarize those notes provide all of the information contained in the notes: "In United States v. Muhammad, 120 F.3d 688, 699 (7th Cir.1997), we held that the government satisfies the requirements of Rule 16 if it turns over a written report that contains all of the information found in an agent's original notes but does not deliver the notes themselves to the defendant." United States v. Coe, 220 F.3d 573, 583 (7th Cir. 2000).

Here, perusal of the reports of the oral interviews of Lira and Rosales and Navar and comparison of those reports with the written statements of Lira and Rosales makes clear that the reports cannot possibly provide all of the information contained in the notes. For instance, the reports refer to Rosales and Lira having "planned" the bank robbery (reports of oral statements of Lira and Navar), but the written statements of Lira and Rosales make clear that none of the defendants (Navar almost certainly included) spoke that way and that the agents wrote their reports based on *their interpretation* of what the defendants apparently said, not on what the defendants *actually said*. Judging from the written statements of Lira and Rosales, the term "plan" – a verb and noun freighted with enormous legal significance in this case -- was well beyond the ken of these defendants and almost certainly was not a word that any of them used. See, e.g., Written Statement of Lira ("This morning when me and girlfriend Jessica Rosales woked up we talked to her cousin Roberto Navar about robbing Harrison Bank and we did like

---

[2] As Rosales noted in her Motion for Severance, she has a cut-off copy of the written statement and shortly will provide the court with a better copy of that statement.

the first bank"); and Written Statement Of Rosales ("I Jessica Rosales talked to Abraham about what going to happed [sic] on Dec I help think about what is going to happen …"). Thus, the agents' notes here almost certainly contain information not contained in the typed reports of the interviews – a better, closer and more contemporaneous record off the exact words that the defendants uttered – as opposed to the agents' interpretation that is set forth in the reports. Production of the agents' notes is thus sought to obtain the best possible government record of what the defendants actually said, which the reports are not.

This is a case where word choice and the exact language used in these statements will, if the statements are admitted at trial, matter enormously. The government contends that Rosales helped plan the robbery, walked with Lira and Navar to the Bank in order to commit the robbery, waited outside the bank with clothing for Lira to change into after the robbery and then helped count and hide the money. Indictment, R. 19, Count Three. Whether Rosales committed these acts or her intent if she did will be hotly contested. The heart of the government's case is the statements made by the defendants. What is needed to assess these statements is the government's best record of the exact words that the defendants used, not the agents' written reports, which almost certainly do not reflect the exact language used and therefore do not contain all of the information in the notes.

Under these circumstances, Rosales respectfully submits that, under the authorities cited above, she is entitled to production of the agents' notes underlying the law enforcement reports of oral statements produced in discovery in this matter.[3]

## CONCLUSION

WHEREFORE, defendant Jessica Rosales respectfully requests that this Court enter an Order directing the government to produce the agent notes underlying the law enforcement reports of oral statements produced in discovery in this matter.

Date:  March 3, 2008.                    Respectfully submitted,

                                         JESSICA ROSALES


                                By:      /s/Timothy P. O'Connor
                                         One Of His Attorneys

Timothy P. O'Connor
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601
(312) 558-5600

---

[3]  In the event that the Court declines to order production of the notes outright, Rosales respectfully requests in the alternative that the Court review the notes in camera to see if they contain additional information that is different from, or otherwise not in, the reports.

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that he caused a copy of the foregoing DEFENDANT ROSALES' MOTION FOR PRODUCTION OF AGENT NOTES to be served upon:

AUSA Yussef Dale
United States Attorney's Office
219 S. Dearborn St.
Chicago, IL 60604

Patrick W. Blegen
Blegen & Garvey
Suite 1437
53 W. Jackson Blvd.
Chicago IL 60604

Sergio F. Rodriguez
Federal Defender Program
55 East Monroe
Suite 2800
Chicago IL 60603

by electronic service on this 3rd day of March, 2008.

/s/ Timothy P. O'Connor