UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 07 CR 796 |
| | ) | |
| JESSICA ROSALES | ) | Judge Joan H. Lefkow |

**GOVERNMENT'S CONSOLIDATED RESPONSE
TO THE PRETRIAL MOTIONS OF DEFENDANT JESSICA ROSALES**

The United States of America, by and through its attorney, Patrick J. Fitzgerald, United States Attorney for the Northern District of Illinois, respectfully submits this consolidated response to the following pretrial motions of defendant Jessica Rosales: (1) Motion to sever Count One of the indictment and/or co-defendant Lira for trial; (2) Motion for production of agents' notes; (3) Motion for early return of trial subpoenas.

**I.   Motion to Sever**

**A.   Joinder Under Federal Rule of Criminal Procedure Eight**

Relying on Federal Rules of Criminal Procedure ("Fed. R. Crim. P.") 8(a), defendant Rosales ("Defendant") contends that co-defendant Lira may not be charged for the two bank robberies in the same indictment.[1] Def. Mot. Doc. 35 at 5. Defendant's contention is without merit. Fed. R. Crim. P. 8(a) is permissive and provides that a defendant may be charged with two different crimes in the same indictment so long as the two crimes are "the same or similar in character." The "same or similar character" requirement of Rule 8(a) "is a rather clear directive

---

[1] Counts One and Two of the indictment charge co-defendant Lira with robbing banks in April 2007 and December 2007, respectively; Count Three of the indictment charges defendant Rosales and co-defendant Lira with conspiring to rob the bank in December 2007.

to compare the offenses charged for categorical, not evidentiary, similarities." *United States v. Coleman*, 22 F.3d 126, 133 (7th Cir. 1994). Counts may be joined "if the offenses are of like class, although not connected temporally or evidentially." *United States v. Turner*, 93 F.3d 276, 283 (7th Cir. 1996) (citation and quotation marks omitted). In fact, "Rule 8(a) requires nothing more than the similarity of the offenses to be joined." *Id*. Joinder is proper where "the counts refer to the same type of offenses occurring over a relatively short period of time, and the evidence as to each count overlaps." *Coleman*, 22 F.3d at 131.

At the very least, the two bank robberies charged in Counts One and Two of the indictment are of a "similar" character, and at most, the same character. Defendant Lira was by far the primary actor in both robberies, and the essence of both robberies was identical. Indeed, in both robberies, defendant Lira is alleged to have entered a bank alone, handed the teller a note demanding money and threatening violence if his demand was not met, and left the bank with the proceeds. Moreover, co-defendant Lira confessed to both robberies to the same agents during the same interrogation session. Contrary to defendant's contention, the mere fact that co-defendant Lira was alleged to have conspired with, and was aided by defendant in the second robbery, who never even entered the bank during the course of that robbery, does not materially change the character of that robbery as compared to that of the first robbery. Because the two bank robberies charged in the indictment are, at the very least, of a similar character, and because defendant and co-defendant Lira are alleged to have acted in concert with respect to one of the bank robberies, the government appropriately joined the defendants and charges in the same indictment under Fed. R. Crim. P. 8.

  B.  **Joinder Under Federal Rule of Criminal Procedure Fourteen**

Relying on Fed. R. Crim. P. 14, defendant Rosales next contends that her trial should be severed because she would be prejudiced by the joinder allowed under Fed. R. Crim. P. 8. Def. Mot. Doc. 35 at 6. Specifically, defendant first contends that she would be denied her constitutional right to confront co-defendant Lira who gave a post-arrest confession that implicated her,[2] and that this would not be cured by redacting the confession or a limiting instruction. Def. Mot. Doc. 35 at 7. Defendant is incorrect. It is well settled that a defendant is not unfairly prejudiced by a co-defendant's confession where the evidence against that defendant is overwhelming aside from the co-defendant's confession. *See e.g. United States v. Hoover*, 246 F.3d 1054, 1059-60 (7th Cir. 2001) (the confessing co-defendant's "words could not have mattered to the jury's consideration of the case against [the defendant] given . . . other damning evidence.") Indeed, the Supreme Court has held that "[i]n some cases the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the co-defendant's admission is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error." *Schneble v. Florida*, 405 U.S. 427, 430 (1972).

Without conceding that defendant's inability to cross examine co-defendant Lira would be incurable by redaction and a limiting instruction,[3] the government contends that defendant would not be harmed by co-defendant Lira's implication of her because the evidence against her is overwhelming aside from co-defendant Lira's confession. First, and most importantly,

---

[2] While defendant Rosales and co-defendant Lira signed confessions, co-defendant Navar did not sign a written confession and, as such, none of his statements regarding defendant's involvement could be put before the jury unless he testified, in which case defendant could, of course, confront him via cross examination.

[3] The government believes that redacting from co-defendant Lira's written confession any reference to "girlfriend" or "Jessica" coupled with a limiting instruction would sufficiently protect defendant's constitutional rights.

defendant herself drafted and signed a confession unequivocally implicating herself in the bank robbery of December 4, 2007, which would be introduced against her at trial. Second, FBI agents would testify at a trial, consistent with their reports, that defendant Rosales made statements implicating herself in the bank robbery that were not fully or well articulated in her written confession. Third, agents would also testify, consistent with their reports, that defendant Rosales told agents where to pick her up and that when they arrested her, she had in her possession over $6,000 that she stated was fruit of the robbery. In short, defendant's own written confession and statements to FBI agents are overwhelming evidence of her guilt and, accordingly, she would not be prejudiced by co-defendant Lira's confession that, in substance, is the same as her own confession and statements regarding her involvement in the robbery.

Defendant next argues that she would be unfairly prejudiced by a trial with co-defendant Lira because of the adverse inference that a jury might draw regarding her involvement in the second robbery based on her choice to remain in a relationship with co-defendant Lira despite her knowledge of his first robbery. Def. Mot. Doc. 35 at 11. As defendant readily points out, in order for her to succeed on this claim, she "must rebut the dual presumptions that a jury will (1) capably sort through the evidence and (2) follow limiting instructions from the court to consider each defendant separately." Def. Mot. Doc. 35 at 12 quoting *United States v. Lopez*, 6 F.3d 1281, 1286 (7th Cir.1993). Respectfully, the inference to which defendant refers does not even approach overcoming these presumptions.

Defendant's argument is unavailing for two reasons. First, it would be next to impossible for defendant to be prejudiced regarding her role in the second robbery by the rather tenuous inference based on her knowledge of the first robbery and relationship with co-defendant Lira, given that there exists so much more direct evidence of her involvement in the second robbery

4

such as her written and signed confession, her statements to FBI agents, and her possession of over $6,000 in cash in a black bag on the day of the robbery while being unemployed. In fact, an equally plausible inference that a jury could draw from the fact that defendant informed on co-defendant Lira to the police regarding the first robbery while being in a relationship with him, is that she is the type of person that would not participate in a second bank robbery with co-defendant Lira. Second, the jury would easily be able to compartmentalize the evidence of the two bank robberies. There is no allegation that defendant had anything whatever to do with the first robbery and it occurred approximately eight months prior to the second robbery. *United States v. Stillo*, 57 F.3d 553, 557 (7th Cir. 1995) ("Because Joseph Stillo was only involved in the Hess episode, it was easy for the jury to compartmentalize the evidence involving Joseph Stillo and that transaction from Judge Stillo's earlier bribe taking.") Moreover, the trial in the case would be expected to last only approximately one week and the evidence pertaining to each count would be straightforward, which would make it relatively simple for the jury to follow the applicable limiting instructions and keep separate the evidence relevant to each count and defendant. *United States v. Rajewski*, 526 F.2d at 155 ("If the jury can reasonably be expected to keep the evidence separate as to each count..., severance should be denied."); *See also Coleman*, 22 F.3d at 135 (no abuse of discretion in refusing to sever counts where the evidence as to each discrete incident was anything but excessive or confusing); *Moya-Gomez*, 860 F.2d at 768 (no abuse of discretion to deny severance even in a long trial where evidence was not complex and jury could reasonably be expected to keep separate the evidence pertaining to joined counts). In light of the above, defendant cannot overcome the presumption in favor of jury competence necessary to sever her trial.

**II.**　　**Production of Agents' Notes**

　　Relying on Seventh Circuit case law, defendant argues that she is entitled to production of the agents' notes of the interviews of defendant because the reports based on those notes most likely don't contain the "exact language [and] words" used by defendant. Def. Mot. Doc. 36 at 7. But the standard for production of the notes is not whether the reports contain the "exact" words and language as those in the notes; rather, the standard is whether the reports contain the information that is in the notes. *United States v. Muhammad*, 120 F.3d 688, 699 (7th Cir. 1997) (Defendant "had no legal basis to compel the Government to produce [an agent's] original interview notes that were subsequently incorporated into the FBI 302. A defendant is not entitled to an agent's notes if the agent's report contains all that was in the original notes."). Under this standard, it is clear here that defendant is entitled to neither production, nor an in-camera inspection of the agents' notes.

　　In support of her argument, defendant points to the text of the agents' reports as compared to that of her written and signed statement and, specifically, the agents' use of the word "plan." Def. Mot. Doc. 36 at 6. This comparison, however, actually supports the government's position that the notes not be produced for discovery or an in-camera inspection. Indeed, defendant's own written statement provides, among other details, that she "talked" to co-defendant Lira about the robbery, and "helped think" about the robbery with him on the morning of the robbery which, by any objective standard, is entirely consistent with helping plan the robbery. Def. Mot. Doc. 36 at 5; *Id*. (Defendant was not entitled to production of the agent's notes because there were no "inconsistencies between the notes and the FBI 302."). Similarly, a further comparison of the two reveals that the other details in the defendant's written statement are reflected in the agents' reports. Since the agents' reports do, in fact, fully and accurately

reflect the defendant's written and signed statement, it follows that those reports contain, and are consistent with, the information in the agents' notes of defendant's interview. Moreover, if defendant has concerns about any alleged difference between the exact words that she used during the interview and the agent's testimony regarding the interview, the government is not presently aware of anything that would foreclose her from questioning the agent on this subject during her cross-examination of the agent, using her own written and signed statement in the process. Because the government is not aware of any material difference between the agents' notes and the resulting report, and because defendant failed to make such a prima facie showing, this Court should deny defendant's motion for discovery of those notes and in-camera inspection of them, which denial would be generally consistent with existing jurisprudence on the issue. *See United States v. Mora*, 994 F.2d 1129, 1139 (5th Cir. 1993) (an agent's "scattered jottings" not discoverable); *United States v. Mena*, 863 F.2d 1522, 1529 (11th Cir. 1989) (interview notes which are merely fragmentary not discoverable); *United States v. Andersson*, 813 F.2d 1450, 1459 (9th Cir. 1987) (rough surveillance notes not discoverable); *United States v. Bastanipour*, 697 F.2d 170, 174-75 (7th Cir. 1982) (handwritten versions of typed memoranda which do not differ materially from the typed version not discoverable).

### III.　Early Return of Trial Subpoenas

　　　The government has no objection to defendant's motion for the early return of trial subpoenas.

The government respectfully requests that defendant Rosales's motions to sever and for production of the agents' notes be denied for the reasons set forth herein.

                                                  Respectfully submitted,

                                                  PATRICK J. FITZGERALD
                                                  United States Attorney

By:    s/ Yusef A. Dale
        Yusef A. Dale
        Special Assistant United States Attorney
        (312) 886-7645

## CERTIFICATE OF SERVICE

The undersigned Assistant United States Attorney hereby certifies that the following document:

    GOVERNMENT'S CONSOLIDATED RESPONSE TO THE PRETRIAL MOTIONS
    OF DEFENDANT JESSICA ROSALES

was served on, in accordance with Fed. R. Civ. P. 5, LR5.5, and the General Order on Electronic Case Filing pursuant to the district court's Electronic Case Filing (ECF) system as to ECF filers.

                                                s/ Yusef A. Dale
                                                Yusef A. Dale
                                                Special Assistant United States Attorney
                                                219 South Dearborn Street
                                                Chicago, Illinois
                                                (312) 886-7645